A11A1323. VANN v. FINLEY et al.
(721 SE2d 156)

BLACKWELL, Judge.

After Michelle Borror and Ryan Holt died in an electrical fire at their mobile home in Richmond County, their parents sued Lewis Vann, an electrical inspector with the Augusta License Inspection

Department, for wrongful death.[1] The Department assigned Vann to inspect the home before Georgia Power connected electricity to it, and the parents allege that Vann negligently failed to inspect the home at all or, at the least, to inspect it properly, and they assert that his negligence is a proximate cause of the deaths of their children. After discovery was complete, Vann moved for summary judgment, but the court below denied his motion. Vann now appeals from the denial of summary judgment,[2] contending that he has immunity with respect to his duty to inspect the home and, in any event, that there is no evidence from which a jury properly might find that his negligence, if any, is a proximate cause of the deaths.[3] Upon our review of the record, we see no error in the denial of summary judgment, and we affirm the judgment below.

The standard for summary judgment is settled and familiar. Summary judgment is warranted when one or more material facts are undisputed, as shown by the pleadings and the evidence of record, and these facts entitle one party to judgment as a matter of law. *Strength v. Lovett*, 311 Ga. App. 35, 39 (2) (714 SE2d 723) (2011). If the record shows that the plaintiff cannot possibly prove an

---

[1] The parents also sued the owners of the mobile home, who had rented it to Borror and Holt, and Georgia Power Company. Neither the owners nor Georgia Power, however, is a party to this appeal.

[2] Vann also appeals from the denial in part of his motion to exclude the opinions of an expert witness pursuant to OCGA § 24-9-67.1, but this part of his appeal does not warrant much discussion. In his enumerations of error, Vann claims that the court below erred when it failed to exclude five particular opinions offered by this expert. But in his principal brief on appeal, Vann offers no reasoned argument in support of this claim, and instead, he just refers this Court to some papers that he filed below. A mere reference to papers contained in the record on appeal, however, does not satisfy our requirement that the briefs on appeal contain reasoned argument in support of each claim of error, and for this reason, we must conclude that Vann has abandoned this claim. See Court of Appeals Rule 25 (c) (2) ("Any enumeration of error which is not supported *in the brief* by citation of authority or argument may be deemed abandoned.") (emphasis supplied); see also *Gooch v. Tudor*, 296 Ga. App. 414, 422 (3) (674 SE2d 331) (2009); *In the Interest of R. S.*, 287 Ga. App. 228, 232 (2) (651 SE2d 156) (2007). Although Vann offers some reasoned argument in his reply brief in support of this claim — about one of the five opinions of the expert that is mentioned in his enumerations of error and a sixth opinion that is not — we do not consider arguments that are raised for the first time in a reply brief. See *Hart v. Redmond Regional Med. Center*, 300 Ga. App. 641, 641, n. 2 (686 SE2d 130) (2009).

[3] Vann also contends on appeal that he is entitled to summary judgment on the parents' claim for punitive damages, arguing that there is no allegation or evidence in this case that he "acted with the specific intent to cause harm." The absence of any proof of a specific intent to cause harm might well be a reason to limit any award of punitive damages in this case to $250,000, see OCGA § 51-12-5.1 (g), but it is no reason to preclude a jury from considering whether punitive damages in some lesser amount might be warranted. Although Vann attempts in his reply brief to make a new argument about punitive damages — he says in his reply brief that there also is no evidence of "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences," evidence that is, in fact, required to authorize an award of punitive damages, see OCGA § 51-12-5.1 (b) — as we already have explained, see note 2 supra, we do not consider arguments raised for the first time in a reply brief.

essential element of his case for which he would bear the burden of proof at trial, see *Cowart v. Widener*, 287 Ga. 622, 623 (1) (697 SE2d 779) (2010), or if it shows that the defendant has proved conclusively an affirmative defense to the claims of the plaintiff, see *Weston v. Dun Transp. & Stringer, Inc.*, 304 Ga. App. 84, 85 (695 SE2d 279) (2010), the defendant is entitled to summary judgment. When a defendant moves for summary judgment based on the inability of the plaintiff to prove an element of his case, the defendant need only point "to an absence of evidence in the record by which the plaintiff might carry the burden to prove that element," and if the defendant does so, the plaintiff "cannot rest on his pleadings, but rather must point to specific evidence giving rise to a triable issue." *Strength*, 311 Ga. App. at 39 (2) (citations and punctuation omitted). When a defendant, however, moves for summary judgment based on an affirmative defense, the defendant must come forward with evidence sufficient to prove each element of his defense, and he is entitled to summary judgment only if he does so, and only if the plaintiff then fails to come forward with any evidence to dispute one or more elements of the defense. See *Weston*, 304 Ga. App. at 85. We review the denial of a motion for summary judgment de novo, viewing the evidence in the record, as well as any inferences that might reasonably be drawn from that evidence, in the light most favorable to the nonmoving party. *Strength*, 311 Ga. App. at 36.

So viewed, the record in this case shows that Holt leased a mobile home in July 2006 for himself and Borror, and Georgia Power was asked to connect electrical power to the home. Because it had been vacant for more than 180 days, however, a reconnect inspection[4] was required before electrical power could be connected, and Georgia Power advised that someone should contact the Augusta License Inspection Department to schedule an inspection. The Department was contacted, and it assigned Vann to conduct the inspection.[5]

According to Vann, he made arrangements to inspect the mobile home on the morning of August 1, and so that he could enter the home as a part of the inspection, he arranged for one of its residents to meet him on that day. Vann went to the home at the appointed time, he said, but neither Borror nor Holt appeared. After waiting

---

[4] It appears from the record that different witnesses have referred to this inspection by different names. Some have referred to it as a "wiring inspection," some have called it an "electrical inspection," and Vann and other employees of the Department have referred to it as a "reconnect inspection." In this opinion, we refer to the inspection as a "reconnect inspection."

[5] Around the time of the fire, Vann did not routinely conduct reconnect inspections, but he has conducted 100 or more reconnect inspections while employed with the Department. The Department inspector usually responsible for reconnect inspections of mobile homes apparently was unavailable when an inspection was requested at the home of Borror and Holt.

"quite a long time," Vann proceeded to inspect the electrical pole at the mobile home, the electrical meter, the service panel underneath the meter, and the yard surrounding the home. According to Vann, nothing about the pole, meter, service panel, or yard suggested that it might be unsafe to connect electrical power to the mobile home, and he saw no signs of blight. Vann then hung a door tag on the front door of the home, which advised the residents that an inspector had come to the home for an inspection and that they should contact the Department to schedule "an appointment" with the inspector. Vann wrote his phone number on the tag. Later that afternoon, Vann testified, an unidentified "young woman" called him about the tag, and he told her that her home needed smoke detectors, to which she responded that smoke detectors either had been installed or soon would be. After speaking with this woman, Vann signed an electrical release form, and based on this form, the Department notified Georgia Power that it could connect electrical power to the home.

Although Vann maintains that he actually visited and inspected the exterior of Borror and Holt's home on August 1, there is some evidence that he did not. Vann admitted at his deposition, for instance, that he did not notice damage to the container that enclosed the electrical meter during his inspection of the meter, notwithstanding that other evidence in the record shows that the damage was obvious.[6] Vann also admitted that he did not see a lock that had been placed on the container, even though another witness said that the lock was so large and obvious that it could be seen from a distance of 30 to 40 feet. When Vann completed his paperwork following the inspection, he described the home as a "blue trailer," although other evidence shows that the mobile home was white. Vann also failed to notice a "junked car" in the side yard of the mobile home, as well as several obviously abandoned and rotting trailers on the property surrounding the mobile home, all of which was visible from the yard.[7] In addition, two witnesses, both of whom were near Borror and Holt's home on the morning of August 1,[8]

---

[6] Notably, several Department employees other than Vann testified that, during a reconnect inspection, they routinely check the meter and the container that encloses it, and they would not authorize a reconnect if the container was damaged.

[7] Vann insists that the primary purpose of a reconnect inspection is to facilitate the enforcement of land use ordinances by identifying blighted properties. During a reconnect inspection, Vann testified, the inspector is supposed to look out for properties that do not comply with the ordinances concerning, among other things, overgrown weeds and shrubbery, junked cars, and trash. The director of the Department and all of its current electrical inspectors agreed that ordinance enforcement is one of the main purposes of a reconnect inspection. According to both Vann and the director, the presence of a junked car in the side yard of a mobile home would be, without more, a sufficient basis for failing the home on a reconnect inspection.

[8] One of these witnesses was a neighbor of Borror and Holt, and the other is one of the

testified that they never saw any inspectors at the home on that day. There is conflicting evidence, therefore, about whether Vann conducted any inspection of the mobile home before the Department authorized Georgia Power to connect electrical power. The evidence is undisputed, however, that Vann never entered the home to inspect its interior. In any event, Georgia Power connected electrical power to the home a few days later.[9]

Then, in the early morning hours of August 22, tragedy struck. An electrical fire erupted in the kitchen of the mobile home, smoke filled the home, and Borror and Holt died of smoke inhalation, failing to escape before succumbing to the smoke.[10] There is conflicting evidence about whether a smoke detector was installed in the home at the time of the fire. An owner of the mobile home testified that a smoke detector had been installed, and he claimed that he found a partially burned smoke detector at the scene of the fire, albeit several years after the fire occurred. But an investigator for the Augusta-Richmond County Fire Department and two other fire investigators searched the fire scene within days of the fire, and they testified that they found no smoke detector and no evidence that one had been installed. One investigator offered his opinion, based on his investigation of the fire scene, that no smoke detector had been installed. Moreover, there is evidence in the record that this fire generated significant smoke, that a smoke detector would have sounded within a minute of detecting such smoke, and that properly functioning smoke detectors "more often than not" successfully wake sleeping residents, and in light of this evidence, the fact that Borror and Holt failed to escape the fire is, we think, additional proof that no smoke detector had been installed.

In March 2007, Borror and Holt's parents filed this lawsuit, alleging that Vann negligently failed either to inspect the home at all or to properly inspect it before the Department authorized Georgia Power to connect electrical power. If Vann had properly inspected the home, the parents contend, he would have seen that no smoke detector had been installed, and he would have insisted upon the installation of a smoke detector before electrical power was con-

---

owners of the mobile home that Holt leased.

[9] After the Department authorized Georgia Power to connect electrical power, a Georgia Power lineman went to the mobile home on August 2, but he noticed the damage to the container that enclosed the meter, and he declined to connect electrical power until this damage was repaired. Someone at Georgia Power apparently notified the owners of the mobile home of this damage, and they repaired it. The same Georgia Power lineman returned to the home a day or so later and, seeing that the damage had been repaired, connected electrical power.

[10] Neither Borror nor Holt had significant burns from the fire itself, and both were found in or near the bedrooms in the back of the mobile home, away from the kitchen.

nected. And if that had happened, the parents assert, Borror and Holt likely would have escaped the fire with their lives.

1. We first consider the contention that Vann has immunity for his inspection of the mobile home. The doctrine of official immunity "offers public officers and employees limited protection from suit in their personal capacity," *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001), and it requires the courts, when a public officer or employee is sued individually, to distinguish between his ministerial and discretionary duties.[11] The doctrine permits a public officer or employee to be sued individually for the negligent performance of his ministerial duties, but he can be sued individually for the performance of his discretionary duties only if he acts wilfully, wantonly, or beyond the scope of his authority. *Gilbert v. Richardson*, 264 Ga. 744, 752 (6) (452 SE2d 476) (1994). Our Supreme Court has explained the distinction between ministerial and discretionary duties:

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of per-

---

[11] Vann claims immunity under the doctrine of official immunity, which protects public officers and employees generally, but he also claims special immunity as an inspector under the Building and Housing Code, the Uniform Act for the Application of Building and Fire Related Codes to Existing Buildings, the Minimum Fire Safety Standards Code, the International Property Maintenance Code, which has been adopted by Augusta-Richmond County, and the Augusta-Richmond County Code. None of these claims of statutory immunity, however, has much merit or warrants much discussion. With respect to the Building and Housing Code, OCGA § 8-2-171 (d) provides that no municipal or county inspector "inspecting a pre-owned manufactured home *pursuant to this Code section* shall be liable for any injuries to persons resulting from any defects or conditions in such pre-owned manufactured home" (emphasis supplied), but this statute was enacted nearly four years *after* Vann says he inspected the mobile home at issue here, and he could not possibly have conducted any inspection at that time "pursuant to" a statute that had not yet been enacted. As for the Uniform Act, OCGA § 8-2-222 relieves municipal and county employees of liability "for damages sustained as a result of any fire or hazard covered by this article *by reason of inspection or other action taken or not taken pursuant to this article*" (emphasis supplied), and as for the Minimum Fire Safety Standards Code, OCGA § 25-2-38.1 (a) similarly relieves municipal and county employees of liability "for damages sustained as a result of any fire or related hazard covered in this chapter *by reason of any inspection or other action taken or not taken pursuant to this chapter*." (Emphasis supplied.) But Vann points us to no evidence in the record that he conducted any inspection of the mobile home at issue pursuant to the Uniform Act or the Minimum Fire Safety Standards Code. Finally, as for the ordinances of Augusta-Richmond County and its adoption of the International Property Maintenance Code, we note that our Constitution authorizes only the General Assembly to immunize public officers and employees from liability "for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions," Ga. Const., Art. I, Sec. II, Par. IX (d), and no local ordinance can supersede the Constitution. See *State v. Hartrampf*, 273 Ga. 522, 523-524 (544 SE2d 130) (2001). Accordingly, if Vann is charged with negligence in the performance of a ministerial duty, Augusta-Richmond County cannot cloak him with immunity, and if he is not so charged, the doctrine of official immunity is sufficient to protect him.

sonal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

*Murphy v. Bajjani*, 282 Ga. 197, 199 (1) (647 SE2d 54) (2007). "The determination of whether an action is discretionary or ministerial depends on the character of the specific actions complained of, not the general nature of the job, and is to be made on a case-by-case basis." *McDowell v. Smith*, 285 Ga. 592, 594-595 (678 SE2d 922) (2009) (citation and punctuation omitted). This Court has acknowledged before that the line between ministerial and discretionary duties sometimes is a hazy one, and some duties may properly be characterized as ministerial, even though some aspect of the duty may involve an exercise of judgment, and some duties may properly be characterized as discretionary, notwithstanding that some aspect of the duty may involve the performance of a required act. *Todd v. Brooks*, 292 Ga. App. 329, 331 (665 SE2d 11) (2008). See also *Golden v. Vickery*, 285 Ga. App. 216, 218-219 (645 SE2d 695) (2007). When a public officer or employee is absolutely required to perform a specific task, "even though the manner in which it is [to be performed] is left to the employee's discretion," the duty to perform the task is properly characterized as ministerial. *Cotton v. Smith*, 310 Ga. App. 428, 434 (2) (714 SE2d 55) (2011) (citation and punctuation omitted).

In this case, the parents contend that Vann had a ministerial duty to actually inspect the mobile home in which their children died before Georgia Power was authorized to connect electrical power and that Vann had a ministerial duty to enter the home and check for smoke detectors as a part of his inspection. Vann responds that the evidence in the record shows definitively that his duties with respect to an inspection of the home were merely discretionary and that, for this reason, he is entitled to summary judgment. Vann fails to persuade us.

The record clearly shows that Vann had a ministerial duty to inspect the mobile home. The evidence is undisputed that Augusta-Richmond County absolutely requires a reconnect inspection of any dwelling that has been vacant for 180 days or more before Georgia Power can connect electrical power to the dwelling, and the evidence shows that it was the policy of the Department to authorize Georgia Power to connect electrical power to such a dwelling only after one of its electrical inspectors had completed a reconnect inspection. The evidence also is undisputed that the mobile home that Holt leased in July 2006 had been vacant for more than 180 days and that the Department assigned the responsibility of conducting a reconnect inspection of the mobile home to Vann. This evidence compels the

160

conclusion that Vann had a ministerial duty to actually conduct a reconnect inspection at the mobile home before the Department authorized Georgia Power to connect electrical power. See *Georgia Dept. of Transp. v. Heller*, 285 Ga. 262, 267-268 (2) (674 SE2d 914) (2009) (where municipal taxicab inspector had no discretion to inspect taxi without proof of prior inspection by taxi company and had no discretion to decline to check tire tread, his "unauthorized and inadequate inspection that allowed the taxi in question to be cleared for operation" amounted to a breach of his ministerial duties); *Barnard v. Turner County*, 306 Ga. App. 235, 238 (1) (701 SE2d 859) (2010) ("Where there is an established policy requiring an official to take specified action in a specified situation, the policy creates a ministerial duty on the part of the official to perform the specified task.") (punctuation omitted); *Happoldt v. Kutscher*, 256 Ga. App. 96, 98-99 (1) (567 SE2d 380) (2002) (where a county has established a policy requiring its employee to inspect construction sites and to review plats to ensure compliance with a specific county ordinance, the performance of such tasks is ministerial). The fact that some aspects of the manner in which a reconnect inspection is to be performed may be left to the discretion of the inspector does not render the duty to inspect discretionary. See *Cotton*, 310 Ga. App. at 434 (2).

Whether Vann had a ministerial duty to enter the home and check for smoke detectors is a closer question, but because there is some evidence from which a trier of fact might conclude that Vann absolutely was required to do these things, it is not a question that properly can be resolved on summary judgment. Vann and other employees of the Department insist that the scope of a reconnect inspection is left to the discretion of the inspector, and they say that no inspector is absolutely required to enter a dwelling and look for anything inside it, including smoke detectors, before electrical power can be connected. At his deposition, however, Vann admitted that, as the senior electrical inspector at the Department, he has trained other electrical inspectors how to conduct reconnect inspections, and he taught them to check for smoke detectors.[12] Moreover, Vann admitted in his verified response to an interrogatory that reconnect inspections "are performed pursuant to policy using the International Property Maintenance Code, 2003 edition," and he admitted at his deposition that the International Property Maintenance Code

---

[12] Vann was asked: "And so have you ever taught [other electrical inspectors] on an existing dwelling where power has been off for 180 days or more to check for — to make sure smoke detectors are in the dwelling?" Vann responded: "Yeah. We tell them check — you know, check the smoke detectors, yes. You know, talk to the people, tell them — make sure they get a smoke detector . . . ."

"is the policy and procedure manual that governs how reconnect inspections are performed" and that the International Property Maintenance Code requires that smoke detectors be installed in residences. Other Department employees testified that they routinely look for smoke detectors as a part of a reconnect inspection. The owners of the mobile home that Holt leased, who own several other mobile homes in the same park, testified that, in their experience with the Department, a reconnect inspection involves an inspection of the interior of the dwelling. And the manager of another mobile home park in Augusta testified by affidavit that, in his experience, "every time [the Department] conducted a reconnect inspection," the inspector examined both the exterior and interior of the home, and the inspector "always" checked for functioning smoke detectors. In light of this evidence, we cannot say on summary judgment that Vann did not have a ministerial duty to enter the mobile home and check for smoke detectors. For these reasons, the court below properly denied summary judgment on the basis of official immunity.

2. We turn next to the contention that, even if Vann were negligent in the performance of a ministerial duty, the parents cannot prove that his negligence was a proximate cause of their children's deaths. We previously have explained the concept of proximate cause in this way:

> The injury must be the natural and probable consequence of the wrongful conduct, such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrong-doer as likely to flow from his act. The injury must be the direct result of the misconduct charged; but it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended.

*Strength*, 311 Ga. App. at 40 (2) (a) (citation and punctuation omitted). We also have explained that the question of proximate cause is usually reserved for the jury and can be decided on summary judgment only "in plain and indisputable cases." *Villanueva v. First American Title Ins. Co.*, 313 Ga. App. 164 (721 SE2d 150) (2011) (citation and punctuation omitted). Thus, summary judgment on the issue of proximate cause can be granted only where "reasonable persons could not differ as to both the relevant facts and the evaluative application of legal standards (such as the legal concept of 'foreseeability') to the facts." Id. (citation and punctuation omitted). See also *Zwiren v. Thompson*, 276 Ga. 498, 500 (578 SE2d 862) (2003) ("What amounts to proximate cause is undeniably a jury

question and is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent.") (citations and punctuation omitted).

The evidence in the record shows that faulty wiring in a light fixture in the kitchen of the mobile home sparked the fire, that the fire produced a tremendous amount of smoke, and that Borror and Holt died as a result of smoke inhalation. The relevant question, therefore, is whether any negligent breach by Vann of his ministerial duties might be found to be a proximate cause of their deaths.[13] The parents contend that their children died for want of a working smoke detector, that Vann would have noticed the absence of smoke detectors and caused smoke detectors to be installed, if only he had properly performed his ministerial duties with respect to a reconnect inspection, and that if smoke detectors had been installed, their children likely would have survived the fire. We think this is a viable theory of proximate causation, and whether it has merit is for a jury to decide.

To support their theory of proximate cause, the parents presented the expert testimony of a fire investigator, who opined that the mobile home probably burned for about ten to twenty minutes. A properly installed smoke detector, however, typically would sound within a minute of the ignition of the fire, the expert said. The expert also explained that smoke detectors are designed specifically to wake people up and that studies show that, "more often than not," the devices successfully wake people and alert them to a fire. This evidence and other evidence in the record would permit a jury to conclude, we think, that the lack of a smoke detector, and therefore any breach by Vann of a ministerial duty to check for smoke detectors, was a proximate cause of the deaths at issue. See *Housing Authority of City of Atlanta v. Jefferson*, 223 Ga. App. 60, 62 (2) (476 SE2d 831) (1996) (affirming denial of summary judgment on the issue of proximate cause and finding that the question of whether the lack of a smoke detector contributed to the plaintiff's injuries was for the jury).

Vann also argues that Georgia Power and the owners of the mobile home were negligent — Georgia Power because it connected electrical power even after finding that the container that enclosed the meter was damaged, and the owners because they failed to install a smoke detector — and that their negligence amounts to intervening and superseding causes of Borror and Holt's deaths, which break

---

[13] Vann argues on appeal that his conduct could not have been a proximate cause of the fire because an interior inspection of the mobile home would not have revealed the faulty wiring that sparked the fire. The question, however, is not whether his conduct caused the fire, but whether it caused the deaths of Borror and Holt.

any chain of causation that leads back to him. Perhaps there is some intervening and superseding cause that breaks the causal chain, but that is a question, we think, for a jury to decide. As to Georgia Power, we note that Georgia Power did, in fact, defer connecting power until the damage to the container was repaired, and Vann points us to no evidence that the damage to the container contributed to the fire or that Georgia Power, in the course of investigating the damage to the container, should have discovered the faulty wiring that did cause the fire or any absence of smoke detectors. And as to the owners, if no smoke detector was, in fact, installed at the mobile home, perhaps they were negligent in failing to install one. But generally speaking, the intervening negligence of another will relieve a defendant of liability only if the defendant could not have reasonably foreseen the negligence of the other. *Cotton*, 310 Ga. App. at 440. Here, a jury might well conclude that an electrical inspector should have reasonably anticipated, based on his experience in conducting reconnect inspections, that an owner might not have installed a smoke detector in the dwelling. Indeed, the evidence that inspectors routinely check for smoke detectors when conducting reconnect inspections suggests as much. Perhaps a jury might find the conduct of Georgia Power or the owners to be an intervening and superseding cause, but a jury might also find such conduct to be merely a concurring cause. See *Glisson v. Freeman*, 243 Ga. App. 92, 108 (5) (532 SE2d 442) (2000) ("[T]he proximate cause of an injury may be two separate and distinct acts of negligence acting concurrently; and . . . the person injured may recover from either or both of the persons responsible. The mere fact that the plaintiff's injuries would not have been sustained had only one of the acts of negligence occurred will not of itself operate to limit the other act as constituting the proximate cause."). Proximate cause in this case is a question for the jury, and the court below did not err when it denied summary judgment on the basis of proximate causation.

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*

DECIDED DECEMBER 1, 2011 ▮▮▮▮▮▮▮▮

*Shepard, Plunkett, Hamilton & Boudreaux, Daniel W. Hamilton,* for appellant.

*Joseph R. Neal, Jr., Douglas M. Nelson, Christopher J. Hudson, Stanley C. House, Charles M. Cork III*, for appellees.