**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 26, 2015**

# In the Court of Appeals of Georgia

A14A1996. BARRON v. WELLS FARGO BANK, N. A.

BRANCH, Judge.

The trial court granted summary judgment in favor of Wells Fargo Bank, N. A. in the bank's suit to reform the legal description of property securing a debt owed to the bank by appellant Mickey J. Barron. The bank argued that the security deed mistakenly identified only part of Barron's single parcel of real property. The trial court based its ruling on judicial estoppel, finding that in his personal bankruptcy proceeding, Barron declared that he owned only one parcel of real property, not two, as he now contends. The trial court also granted summary judgment in favor of the bank on Barron's counterclaims. Barron appeals both decisions. We affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We

review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

Construed in favor of Barron, the record shows that on December 16, 1996, Barron purchased property located at 1610 Chattahoochee Run Drive in Suwanee through a recorded warranty deed; the property, which is Lot 85 of the Chattahoochee Run subdivision, is located on a corner of Chattahoochee Run Drive and Waterton Lane. Barron financed the purchase and executed a security deed in that regard. On June 28, 2001, Barron refinanced the debt and executed another security deed on same property. The original warranty deed and both security deeds describe the secured property with the identical language:

> All that tract or parcel of land lying and being in Land Lot 239 of the 7th District of Gwinnett County, Georgia, being lot 85, block B, Chattahoochee Run Subdivision, Unit 1-C, as per plat recorded in Plat Book 70, Pages 142 & 143, Gwinnett County records, which said plat is incorporated herein and made a part hereof by reference.

The referenced plat will be referred to herein as the "1995 Plat." Barron constructed a house on Lot 85 and occupied the home in 1997.

2

In 2002, Barron decided to purchase most of the vacant lot adjoining the back of his property so that he could build a pool; the lot is known as Lot 94 and is located on Waterton Lane. Barron admits that to execute the property transfer, the owner/developer of Lot 94 redefined or "re-parceled" Lot 85 and the portion of Lot 94 that Barron sought to purchase by merging the sought-after portion of Lot 94 (hereinafter "Lot 94") with Lot 85 and issuing Barron a quitclaim deed to the redefined Lot 85. Thus, on April 26, 2002, John Wieland Homes issued to Barron, who paid cash in exchange, a quitclaim deed that described the property as Lot 85 as shown on a different plat:

> All that tract or parcel of land lying and being in Unit 1-C, Chattahoochee Run subdivision, Land Lot 239 of the 7th District, Gwinnett County, Georgia, and being Lot 85 as per Plat Book 91, Page 43, Gwinnett County, Georgia, records, which recorded plat is incorporated herein by reference.

The referenced plat, the "2001 Plat," shows the now enlarged Lot 85. After the purchase, Barron took down a fence that separated the two lots, rebuilt the fence around the now-combined parcel, and eventually constructed a swimming pool on the newly acquired property.

3

In May 2004, Barron again sought to refinance his residential purchase money debt, which was then held by Washington Mutual Bank, FA, (WaMu), and he eventually executed a security deed in that regard. During the relevant negotiations, Barron requested and received WaMu's assurance that only the original property would be used as security for the refinanced debt. The legal description of the property given in the relevant May 5, 2004 security deed identifies the correct property address and tax parcel number, and it refers to the 1995 Plat, not the 2001 Plat:

> All that tract or parcel of land lying and being in land lot 239 of the 7th District of Gwinnett County, Georgia, being Lot 85, Block B, Chattahoochee Run Subdivision, Unit 1-C, as per plat recorded in Plat Book 70, pages 142 & 143, Gwinnett County records, which said plat is incorporated herein and made a part hereof as reference.

The 1995 Plat, of course, shows the original Lot 85 that Barron purchased in 1996. Other evidence shows that unlike Lot 85, Lot 94 was not originally a part of "Block B" of the development but rather, "Block E." Thus, Barron argues, the reference to Block B in the May 2004 security deed lends further support to his argument that that deed referred only to the original Lot 85. In connection with the refinancing, Barron

4

signed a promissory note for $269,520. On April 3, 2007, WaMu assigned the debt and related documents to Wells Fargo Bank, NA.

By 2011, Barron was "deeply in debt" and in default on the note to Wells Fargo. On February 4, 2011, apparently on the eve of a foreclosure by Wells Fargo, Barron filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. On Schedule A of his Bankruptcy petition, where he was required to "list all real property in which the debtor has any legal, equitable, or future interest," Barron declared under penalty of purgery that he owned a single parcel of real property; he identified this property as "1610 Chattahoochee Run Drive," valued the property at $250,000, and stated that the "amount of the secured claim" was $270,000. On Schedule D, where he was required to list "all entities holding claims secured by property of the debtor," Barron declared that Wells Fargo held a secured claim against him, and he indicated that the secured property was valued at $250,000, that the amount of the claim was $260,000, and that the unsecured portion of the claim[1]

---

[1] These figures are shown on an official form Schedule D, and the value for the unsecured portion of the claim is shown in a column entitled "UNSECURED PORTION, IF ANY." The Advisory Committee Notes for the official form explain that this column shows "the amount of any unsecured portion *of the claim*," i.e., "amounts that exceed the value of the collateral." Fed. R. Bankr. P. OFFICIAL Form B 6, "1991 Enactment" and "2006 Amendment." (Emphasis supplied).

was $10,000. On other schedules, Barron declared over $2.6 million of unsecured debts. Also, Barron did not list in the bankruptcy schedules that he had a claim against Wells Fargo or WaMu. On May 19, 2011, Barron was discharged in bankruptcy, which included being absolved of all of the unsecured debt. Wells Fargo, however, retained a right to proceed against the secured property after Barron's discharge.

On January 20, 2012, an employee of a title agency filed in the Gwinnett County property records an "affidavit of scrivener's error" in which the employee averred that "someone" at the title agency caused the May 5, 2004 security deed to be filed with an incorrect legal description in that it referenced the 1995 Plat instead of the 2001 Plat. Within three weeks, Barron, too, filed a scrivener's error affidavit in which he averred that he had specifically negotiated with WaMu to exclude from the secured property the portion of his property that he purchased in 2002 and that, accordingly, the legal description in the May 5, 2004 security deed accurately reflected the intent of the parties to that document.

On August 20, 2012, Wells Fargo filed the present suit for an equitable reformation of the 2004 security deed, arguing that the deed's failure to reference the 2001 Plat was a mutual mistake between the parties. Wells Fargo sought to reform the

6

deed so that it could foreclose on the entire property located at 1610 Chattahoochee Run Drive. Barron answered and counterclaimed to quiet title, for damages for slander of title and intentional interference with property rights, and for declaratory relief. The court granted summary judgment in favor of Wells Fargo on its claims and Barron's counterclaims. The court held that Barron was judicially estopped from claiming ownership of the portion of Lot 94 that he purchased in 2002 free and clear of Wells Fargo's claim of a security interest. The trial court held that Barron failed to disclose to the bankruptcy court the existence of the allegedly unencumbered portion of his property, that he admitted that he considered the property to be "one exempt parcel for the purposes of the bankruptcy," and that he is therefore barred from asserting that he owns Lot 94 free and clear of any security interest.

1. Barron contends the trial court erred by concluding that he was judicially estopped. We disagree.

The common law equitable doctrine of judicial estoppel provides that a party may not assume a position in a legal proceeding, succeed by maintaining that position, then assume a contrary position "'especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *Roberts v. State*, 278 Ga. 610, 612 (604 SE2d 781) (2004), quoting *New Hampshire v. Maine*, 532 U.

7

S. 742, 749 (II) (121 SCt 1808, 149 LE2d 968) (2001) (citation omitted). "It is most

commonly invoked to prevent bankruptcy debtors from concealing a possible cause

of action, asserting the claim following the discharge of the bankruptcy and excluding

resources from the bankruptcy estate that might have otherwise satisfied creditors."

*Period Homes v. Wallick*, 275 Ga. 486, 488 (2) (569 SE2d 502) (2002) (citation

omitted). Judicial estoppel "is invoked by a court at its discretion, and intended to

prevent abuse of the judicial process. The circumstances under which it is appropriate

are not reduced to any general formula or rule." Id. (citation omitted). Georgia courts

have followed the United States Supreme Court, however, in considering "three

factors pertinent to the decision whether to apply the doctrine in a particular case":

> (1) the party's later position must be "clearly inconsistent" with its earlier position; (2) the party must have succeeded in persuading a court to accept the party's earlier position; . . . absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*IBF Participating Income Fund v. Dillard-Winecoff, LLC*, 275 Ga. 765, 766-767 (573

SE2d 58) (2002) (citation and punctuation omitted). We review a lower court's

8

application of judicial estoppel for abuse of discretion. *Klardie v. Klardie*, 287 Ga. 499, 502 (2) (697 SE2d 207) (2010); *Pew v. One Buckhead Loop Condo. Assn.*, 305 Ga. App. 456, 460 (1) (b) (700 SE2d 831) (2010).

(a) Clear Inconsistency. Barron claims his assertion that he has title to Lot 94 free and clear of Wells Fargo's security interest is not inconsistent with his bankruptcy court declarations because he in fact listed his interest in Lot 94 on Schedules A and D when he "listed $10,000 of the Property's value as being unsecured." Barron continues: "Mr. Barron listed the $10,000 figure to identify [Lot 94]. Wells Fargo did not contest Barron's claim that $10,000 of *the property's value* was unsecured." (Emphasis supplied). This argument has no merit. The only place that Barron wrote the figure "$10,000" on either Schedule A or D was on Schedule D, where Barron declared that Wells Fargo had a secured claim against him and that the "unsecured portion" was $10,000. The official bankruptcy form itself, especially when read in light of the bankruptcy form advisory committee notes, shows that this column required Barron to declare the unsecured portion *of Wells Fargo's claim*, not the portion of Barron's property that was unsecured. See supra, n. 1. Barron offers no citation of authority for his interpretation of the official Schedule D form, and it defies the plain reading of the form. We conclude that the trial court acted within its

9

discretion by holding that Barron did not declare Lot 94 as an unsecured parcel of property in his bankruptcy filing.

Barron also averred that he "discussed" Lot 94 with the bankruptcy trustee and told the trustee "what he was going to do." But Barron did not testify that he told the trustee that Lot 94 was unsecured; that Barron would not be listing Lot 94 as an item of real property, as required, on Schedule A of his bankruptcy filings; or that he would be placing a value in a column on Schedule D that is meant to contain the portion of the creditor's claim that is unsecured while harboring the secret intent to convey a different meaning. Moreover, Barron admitted under oath in this case that he considered Lot 85 and Lot 94 "to be one exempt parcel for the purposes of the bankruptcy." Again, the trial court did not abuse its discretion in concluding that Barron failed to disclose his claim that he owned Lot 94 free and clear of any security interest.

(b) Success in Bankruptcy Court. The facts also show that Barron successfully convinced the bankruptcy court that he did not have an unsecured piece of real estate. The bankruptcy court discharged Barron based on "a report of no distribution," "meaning that he had located no nonexempt assets that could be liquidated for the benefit of creditors." *In re Sullivan*, 2015 WL 780261 (Bankr. E.D. Cal. 2015); *In re*

*Kran*, 760 F.3d 206, 209 (2d Cir. 2014) (where trustee "concludes that no non-exempt property exists to be collected on behalf of creditors, he or she files a 'No Asset' report or a 'Report of No Distribution'").

(c) Unfair Advantage. Finally, the trial court was authorized to conclude that Barron would derive an unfair advantage if not estopped in that he would have failed to disclose an asset that might have been available to creditors if he had declared it in his bankruptcy filings. See *Pappacoda v. Palmetto Health*, 2014 WL 4417559 (D.S.C. 2014) (after trustee issued report of no distribution, debtor judicially estopped from asserting claim that she failed to disclose in bankruptcy proceedings).

We conclude that the trial court did not abuse its discretion in applying judicial estoppel to bar Barron from taking advantage of the possibility that he continues to own Lot 94 following his discharge in bankruptcy. See, e.g., *Battle v. Liberty Mut. Fire Ins. Co.*, 276 Ga. App. 434, 436 (623 SE2d 541) (2005) (homeowner judicially estopped from recovering insurance proceeds for fire damage to his home because he failed to declare the house as an asset in his earlier successful bankruptcy; there is no requirement "that a party raising the defense of judicial estoppel must show that it was directly affected by its opposing party's prior inconsistent successful position"). See generally *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("All six

11

[federal] appellate courts that have considered this question [as of 2006] hold that a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends.") (citations omitted).

2. Barron makes four additional arguments as to how the trial court erred in granting summary judgment on Wells Fargo's equitable claim to reform the deed based on mutual mistake and his counterclaims, even if judicial estoppel is applicable.

(a) Barron contends Wells Fargo is not entitled to summary judgment because it failed to present evidence to show that the parties made a mutual mistake on the April 26, 2002 security deed. But based on judicial estoppel, the trial court held that Barron was "barred from asserting that he did not intend to encumber the entire Property." Because we have affirmed the trial court's ruling on judicial estoppel, Barron is barred from asserting any facts to contradict the trial court's holding. Because it has now been established that Barron intended to encumber the entire property, which Wells Fargo also asserts, it is now undisputed that the April 26, 2002 security deed encumbered the combined Lot 85 and 94. Barron's argument therefore fails.

(b) Barron contends the trial court erred by granting summary judgment because Wells Fargo failed to produce a Rule 30 (b) (6) witness prior to the hearing on the motion for summary judgment. Barron contends that he was therefore "deprived [of] the opportunity to depose Wells Fargo on any evidence it possessed relating to mutual mistake and its position on Mr. Barron's contention that there has been no mutual mistake." The application of judicial estoppel — which has established that Barron intended to encumber his entire property — defeats Baron's argument.

In general, "this Court does not condone the grant of summary judgment while a motion to compel discovery is pending, *unless it can be determined that the disallowed discovery would add nothing of substance to the party's claim.*" *915 Indian Trail v. State Bank & Trust Co.*, 328 Ga. App. 524, 535 (3) (759 SE2d 654) (2014) (citation and punctuation omitted; emphasis in original). Here, Barron is barred by judicial estoppel from contradicting that the parties intended to encumber the entire property at issue in this case, the sole issue raised by Wells Fargo's complaint. Thus, a deposition of Wells Fargo can add nothing of substance to the claim or any defenses thereto. We find no error.

(c) Barron contends that Wells Fargo's complaint was untimely.

"An action to reform a written document may be brought within seven years from the time the cause of action accrues." *Haffner v. Davis*, 290 Ga. 753, 756 (3) (725 SE2d 286) (2012) (citation omitted). "As a general rule, the statute of limitation does not commence to run against an equitable action for reformation of a written instrument based on mutual mistake or fraud until the mistake or fraud has been, or by the exercise of reasonable diligence should have been, discovered." Id. (citation and punctuation omitted). Here, Wells Fargo was first assigned an interest in the property on April 3, 2007 and it filed suit on August 20, 2012; thus, Wells Fargo filed suit approximately five years and four months after it reasonably could have been expected to discover an error regarding the May 2004 security deed. Moreover, "[t]here is an exception that permits the grant of [equitable] relief [in the form of contract reformation] even in cases of negligence when the other party has not been prejudiced." *Haffner*, 290 Ga. at 756 (3). Here, Barron cannot be prejudiced by the contract reformation because he is judicially estopped from asserting an unencumbered interest in the property. Thus Wells Fargo's complaint was timely.

(d) Barron contends that the trial court failed to consider his submission of material facts as to which there exists a genuine issue. But the trial court's application of judicial estoppel controls all material issues of fact regarding Wells Fargo's claims.

14

3. Barron has not argued or cited authority in support of his counterclaims and, accordingly, has abandoned any claims of error in that regard. See Court of Appeal Rule 25 (c) (2). Moreover, all of Barron's counterclaims are dependent on the same issue resolved by way of judicial estoppel. For all of the above reasons, the trial court did not err by granting summary judgment in favor of Wells Fargo on its claims and on Barron's counterclaims.

4. Barron's assertion in his reply brief that his original counsel was ineffective is not grounds for reversal. "[T]he constitutional right to effective assistance of counsel does not extend to participants in a civil dispute." *Mathes v. Mathes*, 267 Ga. 845 (483 SE2d 573) (1997) (citation omitted). Moreover, this Court will not consider arguments raised for the first time in a reply brief. *Vann v. Finley*, 313 Ga. App. 153, 154, n. 2 (721 SE2d 156) (2011).

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur*.