A11A0672. STRENGTH v. LOVETT et al.
(714 SE2d 723)

BLACKWELL, Judge.

When a young driver fled from the scene of a traffic stop, a Richmond County deputy sheriff gave chase. The pursuit quickly reached high speeds and ended only minutes later, when the fleeing driver collided with another car. Laura Felder was a passenger in that car, and she was killed in the collision. Her Estate and children brought this lawsuit against Ronnie Strength, the Sheriff of Richmond County, in his official capacity, alleging that the deputy, when he chose to continue the pursuit even after it reached high speeds, acted in reckless disregard of proper police procedures and thereby caused Felder's death. The Sheriff moved for summary judgment, asserting both sovereign immunity and that the plaintiffs cannot prove that the choice of the deputy to continue the pursuit was a legal cause of Felder's death. The trial court denied the motion for summary judgment, and the Sheriff appeals. We vacate the order denying the motion and remand the case for the court below to consider whether the Estate of Felder and her children have suffi-

---

cient evidence to create a jury question on the issue of cause in fact, but we find no error in the court's denial of summary judgment on sovereign immunity and proximate cause grounds.

In an appeal from the denial of a motion for summary judgment, we undertake a de novo review of the record evidence, viewing it in the light most favorable to the nonmoving parties, the Estate of Felder and her children in this case. *Hood v. Todd*, 287 Ga. 164, 165 (695 SE2d 31) (2010). So viewed, the record shows that on the evening of Saturday, March 1, 2008, around 9:00, a Richmond County deputy sheriff observed Jamie Ray Clark, a 19-year-old resident of South Carolina, make a u-turn in a Chevrolet Blazer, in disregard of a traffic signal at an intersection in downtown Augusta. The deputy initiated a traffic stop, and Clark pulled his vehicle to the shoulder of the street and stopped. Clark gave his provisional driver's license, which permitted him to drive only if accompanied by someone more than 21 years of age, to the deputy. Because the only passenger accompanying Clark was less than 21 years of age, another officer telephoned Clark's aunt and asked her to come to Augusta and pick up Clark and his passenger. As they awaited the arrival of Clark's aunt, the deputy began to write two traffic citations, one for disregard of a traffic control device, the other for driving in violation of license restrictions.

Before the deputy finished writing these citations, Clark suddenly restarted his vehicle and drove away from the scene of the traffic stop. The deputy activated his emergency equipment and gave chase.[1] The pursuit covered more than four miles,[2] and Clark and the pursuing deputy reached speeds of at least 90 miles per hour.[3] In the course of the pursuit, the deputy observed Clark overtake other vehicles in a reckless manner and enter several intersections against traffic signals. As Clark entered the last of these intersections, his Blazer collided with a car in which Felder was a passenger. She was killed in the collision.

At the time of the pursuit, the Richmond County Sheriff's Office had adopted a written policy identifying the circumstances in which its officers were permitted to initiate and continue emergency vehicle pursuits. According to this policy, when an officer decides whether to give chase or continue a pursuit, "[i]t is of paramount

---

[1] At some point, another officer joined the pursuit, fell in behind the deputy who had initiated the traffic stop originally, and transmitted location updates and other information by radio to police dispatchers throughout the course of the pursuit.

[2] It appears that the pursuit occurred on two major roads — Broad Street and Gordon Highway — in and near downtown Augusta. According to a Sheriff's Office supervisor, on a typical Saturday evening, one would find "light to medium" traffic on these roads.

[3] Clark and the deputy reached these high speeds while driving in a zone in which the maximum speed limit was 45 miles per hour.

importance that [the] officer weigh the seriousness of the offense committed against the danger to the officer and others who might be affected by the pursuit." Under the policy, "[p]ursuits should be undertaken only when reasonably necessary in the given circumstances." The policy suggests that "[i]t may . . . be wise to abandon pursuit of misdemeanor offenders and, in some cases even felony offenders, rather than continue a highly dangerous pursuit." And the policy advises that "[s]trong consideration should be given to abandoning a pursuit" whenever, among other things, "the pursuit enters a populated area and an unreasonable danger to the public exists" or "the subject can be identified to the point where later apprehension can be accomplished." Because the policy requires a balancing of factors of which the pursuing officer has the most and best knowledge, the policy commits the decision about whether to initiate or continue a pursuit to the pursuing officer, at least in the absence of a command from a superior officer. The pursuing deputy in this case was familiar with this policy at the time of the pursuit.

The policy also requires an officer, when he initiates a pursuit, to notify his field supervisor. In accordance with this provision of the policy, the pursuing deputy in this case contacted his field supervisor by radio as the pursuit began and informed the supervisor of his location and that he was engaged in a pursuit. The deputy also told his supervisor that the fleeing driver was being pursued for traffic violations only and that the driver might, the deputy believed, try to cross into South Carolina. The supervisor responded that, if the driver left Georgia, the deputy should discontinue the pursuit at the state line.[4] The deputy then told his supervisor that he still was in possession of the driver's license of the fleeing driver, at which point the supervisor responded that the deputy should discontinue the pursuit immediately and instead obtain warrants for the arrest of the driver. The deputy testified, however, that he did not hear the instruction to discontinue the pursuit immediately.[5] The deputy did not inform his supervisor during the course of the pursuit of the high speeds at which he and Clark were traveling.

In February 2009, the Estate of Felder and her children filed this lawsuit against the Sheriff in his official capacity, alleging that the

---

[4] Clark did not, in fact, drive toward the state line as the deputy had expected he would.

[5] At his deposition, the deputy explained that an officer might not receive a radio transmission if another officer were transmitting on the same channel at the same moment or if he were in an area with poor radio reception. When it became apparent to the supervisor that the deputy had not received the instruction to discontinue the pursuit, the supervisor and a lieutenant with the Sheriff's Office attempted to raise the deputy again on the radio, but they were unable to do so. They received a "busy signal" when they tried to contact the deputy again, which indicated either that multiple users were transmitting on the same frequency or that the deputy was in an area with poor reception.

deputy's decision to continue the pursuit of Clark was reckless and caused the death of Felder.[6] The Sheriff moved for summary judgment on two grounds. First, the Sheriff said, he was entitled to sovereign immunity. Second, he argued, the undisputed evidence established as a matter of law that the decision of the deputy to continue the pursuit was not the legal cause of the collision that killed Felder. The court below denied his motion, and this appeal followed.

1. We first consider whether the Sheriff is entitled to sovereign immunity in this case. Under our Constitution, Georgia counties enjoy sovereign immunity, *Gilbert v. Richardson*, 264 Ga. 744, 747 (2) (452 SE2d 476) (1994), and can be sued only if they have waived their immunity. *Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001). A lawsuit against a sheriff in his official capacity is considered a suit against the county, and the sheriff is entitled to assert any defense or immunity that the county could assert, including sovereign immunity. *Gilbert*, 264 Ga. at 746 (2), n. 4. See also *Seay v. Cleveland*, 270 Ga. 64, 65-66 (1) (508 SE2d 159) (1998). The question, then, is whether the sovereign immunity of Richmond County has been waived with respect to the claim asserted against the Sheriff in this case.

Under OCGA § 36-92-2 (a), the sovereign immunity of a county is waived "for a loss arising out of claims for the negligent use of a covered motor vehicle."[7] A "covered motor vehicle" is any motor vehicle owned, leased or rented by the county, OCGA § 36-92-1 (2), and the Sheriff does not dispute that the patrol car in which his deputy pursued Clark was a "covered motor vehicle." The Sheriff contends, however, that the claim in this case is not one for "the negligent use of" the patrol car. First, the Sheriff says, a deputy makes a "negligent use of" a vehicle only when he operates that vehicle in a negligent manner, and the safe operation of a vehicle while executing a reckless decision to continue a pursuit does not amount to operating the vehicle in a negligent manner. Second, the Sheriff says, the plaintiffs in this case allege that the decision of the deputy to continue the pursuit was reckless, and recklessness and negligence are mutually exclusive.

We recently considered and rejected these very arguments in our decision in *McCobb v. Clayton County*, 309 Ga. App. 217, 221 (1) (710 SE2d 207) (2011), where we said that "a claim that an officer acted with reckless disregard for proper law enforcement procedures in

---

[6] In their complaint, the plaintiffs also named the consolidated government of Augusta-Richmond County as a defendant, but they subsequently dismissed their claims against the County without prejudice.

[7] This waiver is a limited one. See OCGA § 36-92-2 (a) (3), (b).

pursuing a fleeing suspect comes within the ambit of claims for negligent use of a city- or county-owned motor vehicle." The analysis of these issues in *McCobb* is reasoned and reasonable, and we will not revisit it in this case. Under *McCobb*, the sovereign immunity of the Sheriff is waived as to the claims that the Estate of Felder and her children assert against him.

2. We next consider the Sheriff's contention that the evidence establishes as a matter of law that the decision of the deputy to continue his pursuit of Clark was not a legal cause of the collision that killed Felder. About causation, the Sheriff makes two distinct arguments. First, the Sheriff points out, when someone is killed in a collision with a suspect who is fleeing from a pursuing law enforcement officer, the officer's decision to initiate or continue the pursuit is the proximate cause of the collision only to the extent that the officer decided to initiate or continue the pursuit in reckless disregard of proper law enforcement procedures. OCGA § 40-6-6 (d) (2). Here, the Sheriff asserts, there is no evidence that the deputy pursuing Clark acted in reckless disregard of proper law enforcement procedures. Second, the Sheriff says, the decision of the deputy to continue his pursuit of Clark is not the cause in fact of the collision because there is no proof that, but for the decision to continue the pursuit, Clark would not have collided with the car in which Felder was a passenger. We will address these arguments in turn.

Before we reach these arguments, however, it is appropriate to review some of the settled principles that a trial court applies when considering a motion for summary judgment and that we apply when reviewing the denial of such a motion. Summary judgment is warranted when any material fact is undisputed, as shown by the pleadings and record evidence, and this fact entitles the moving party to judgment as a matter of law. *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010). So, to prevail on a motion for summary judgment, the moving party must show that there is no genuine dispute as to a specific material fact and that this specific fact is enough, regardless of any other facts in the case, to entitle the moving party to judgment as a matter of law. Id. When a defendant moves for summary judgment as to an element of the case for which the plaintiff, and not the defendant, will bear the burden of proof at trial — like the Sheriff in this case as to causation — the defendant may show that he is entitled to summary judgment either by affirmatively disproving that element of the case or by pointing to an absence of evidence in the record by which the plaintiff might carry the burden to prove that element. Id. And if the defendant does so, the plaintiff "cannot rest on [his] pleadings, but rather must point to specific evidence giving rise to a triable issue." Id. (citation and punctuation omitted). We review the denial of summary judgment de

40

novo. Id. at 624.

(a) According to the common law, the plaintiff in any tort case must prove that the wrongful conduct of the defendant is the legal cause of his injuries, and to prove causation, the plaintiff must show that the wrongdoing is both a cause in fact and a proximate cause of the injuries. *Calhoun First Nat. Bank v. Dickens*, 264 Ga. 285, 286 (2) (443 SE2d 837) (1994); see also *Textile Rubber & Chemical Co. v. Thermo-Flex Technologies*, 308 Ga. App. 89, 97 (2) (c) (706 SE2d 728) (2011). We first consider the question of proximate cause. We recently explained the concept of proximate cause in this way:

> [T]he injury must be the natural and probable consequence of the [wrongful conduct], such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrong-doer as likely to flow from his act. The injury must be the direct result of the misconduct charged; but it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended.

*Ga. Dept. of Human Resources v. Bulbalia*, 303 Ga. App. 659, 664 (2) (694 SE2d 115) (2010). The usual rule of proximate cause has been modified, however, in cases like this one.

In response to the holding of our Supreme Court in *Mixon v. City of Warner Robins*, 264 Ga. 385, 389 (1) (444 SE2d 761) (1994), that the decision of an officer to initiate or continue a pursuit of a fleeing suspect in some cases may be the proximate cause of injuries sustained by a third person struck by the suspect, the General Assembly amended OCGA § 40-6-6 (d) (2) to address the question of proximate cause in such cases. See *City of Winder v. McDougald*, 276 Ga. 866, 867 (583 SE2d 879) (2003). As amended, OCGA § 40-6-6 (d) (2) provides, in pertinent part:

> When a law enforcement officer in a law enforcement vehicle is pursuing a fleeing suspect in another vehicle and the fleeing suspect damages any property or injures or kills any person during the pursuit, the law enforcement officer's pursuit shall not be the proximate cause or a contributing proximate cause of the damage, injury, or death caused by the fleeing suspect unless the law enforcement officer acted with reckless disregard for proper law enforcement procedures in the officer's decision to initiate or continue the pursuit. . . .

Here, the parties dispute whether there is any evidence from which

a jury properly might conclude that the deputy pursuing Clark "acted with reckless disregard for proper law enforcement procedures" when he decided to continue the pursuit until the time Clark collided with the vehicle in which Felder was a passenger.

Our analysis begins with the question of exactly what procedures — the procedures that a reasonable law enforcement agency would adopt, the standard procedures that most law enforcement agencies have adopted, or the actual procedures that the agency employing the pursuing officer in a particular case has adopted — are the "proper law enforcement procedures" to which OCGA § 40-6-6 (d) (2) refers. Our Supreme Court has never addressed the question, and neither has our Court.[8] But it is a question that we need not answer definitively in this case. Here, as we understand the evidence, the standard policy of law enforcement agencies with respect to pursuits of fleeing suspects and the actual policy of the Richmond County Sheriff's Office on the same subject are not that different.[9] Both require that an officer balance the need to immediately apprehend a fleeing suspect against the risk to the officer and the public of initiating or continuing a pursuit. So, we now turn to whether there is some evidence from which a rational jury might properly find that the pursuing deputy acted in reckless disregard of these law enforcement procedures when he decided to continue the pursuit in this case.

We think the record does contain such evidence. As we noted earlier, it is undisputed that, at the time the pursuit commenced, the deputy only intended to cite Clark for traffic violations and had no intention of taking him into custody, instead arranging for his aunt to drive him home. When Clark fled, the deputy had confirmed his identity and still had his driver's license. Knowing nothing more than these facts, the field supervisor concluded that the pursuit ought to be discontinued. And there is evidence that, during the course of the pursuit, the pursuing deputy observed Clark driving at

---

[8] In one recent case, we treated the actual policy of the law enforcement agency with which the pursuing officer was employed as the "proper law enforcement procedure," without discussing this question expressly. See *Rahmaan v. DeKalb County*, 300 Ga. App. 572, 574-575 (685 SE2d 472) (2009). In other cases, we have considered evidence that the decision to pursue was consistent with both the actual policies of the agency employing the pursuing officer and "standard law enforcement procedures," see *Standard v. Hobbs*, 263 Ga. App. 873, 879-880 (3) (589 SE2d 634) (2003), or evidence that the decision was inconsistent with both the policies of the employing agency and otherwise "proper law enforcement procedures," see *Lang v. Becham*, 243 Ga. App. 132, 133-134 (530 SE2d 746) (2000), without having to address which are the relevant procedures. The issue seems unsettled.

[9] To the extent there is any difference between the standard policy and the policy of the Richmond County Sheriff's Office, an expert for the plaintiffs suggested that the Richmond County policy might be less protective of the public. Any such difference, however, is not material to this appeal.

high speeds, reaching at least 90 miles per hour in a zone in which the maximum speed limit was 45 miles per hour, overtaking other vehicles in a reckless manner, and entering several intersections against traffic signals, circumstances that apparently were unknown to the field supervisor.

The Richmond County Sheriff's Office policy provides that "[s]trong consideration should be given to abandoning a pursuit" whenever "the subject can be identified to the point where later apprehension can be accomplished." Moreover, the field supervisor and other high-ranking officers with the Richmond County Sheriff's Office testified that, applying this policy to the circumstances of this case, they would have discontinued the pursuit. And an expert testified at a deposition that the decision to continue the pursuit of Clark was a "clear violation" of policy, considering that the deputy already knew his identity and could have obtained a warrant for his arrest. Although the deputy testified that he did not believe the pursuit posed any great risk to the public, a jury could conclude otherwise, especially considering that the deputy had observed Clark recklessly overtake other vehicles on the road.[10]

To show proximate cause under OCGA § 40-6-6 (d) (2), the Estate of Felder and her children must show, at a minimum, that the deputy "acted with reckless disregard for proper law enforcement procedures in [his] decision to . . . continue the pursuit." And "reckless disregard" is generally understood to mean "[c]onscious indifference to the consequences (of an act)." Black's Law Dictionary, p. 1276 (7th ed. 1999). It is undisputed that the deputy was aware of the policy of the Richmond County Sheriff's Office concerning pursuits at the time he pursued Clark, and there is some evidence, recited above, from which a reasonable jury could, we think, properly conclude that the deputy chose to continue the pursuit with "conscious indifference" to whether continuing the pursuit violated proper law enforcement procedures.

The Sheriff says that we ought not focus on the decision to continue the pursuit and that we instead should ask whether the deputy operated his own vehicle recklessly during the course of the pursuit, noting that the Estate of Felder and her children do not offer any criticism of the deputy, "other than his mere mental decision to

---

[10] In their briefs in this Court, the plaintiffs say that "[i]t was not necessary that [the deputy] impose the death penalty on innocent motorists in order to capture a traffic violator, but that is what he decided to do." But there is no evidence in this case that the deputy intended that harm come to anyone as a result of his decision to pursue Clark, and for this reason, even if he acted with "reckless disregard for proper law enforcement procedures," we think there is no good reason to say that the deputy chose to "impose the death penalty on innocent motorists." Reckless disregard for a policy and intent to cause death to another are not the same, as the plaintiffs admit elsewhere in their brief.

pursue Clark." And the Sheriff argues that there is no evidence whatsoever in this case that the deputy himself drove in a reckless manner while pursuing Clark. But our consideration of proximate causation under OCGA § 40-6-6 (d) (2) is guided by the statute itself, and the statute says quite unambiguously that the relevant issue is whether the deputy "acted with reckless disregard for proper law enforcement procedures *in [his] decision to initiate or continue the pursuit.*" OCGA § 40-6-6 (d) (2) (emphasis supplied). When we consider the meaning of a statute, "we always must presume that the General Assembly means what it says and says what it means." *Northeast Atlanta Bonding Co. v. State of Ga.*, 308 Ga. App. 573, 577 (1) (707 SE2d 921) (2011). Consequently, "[w]hen a statute contains clear and unambiguous language, such language will be given its plain meaning and will be applied accordingly." *Opensided MRI of Atlanta v. Chandler*, 287 Ga. 406, 407 (696 SE2d 640) (2010).

Notwithstanding the plain meaning of the statute, the Sheriff points to our decision in *Pearson v. City of Atlanta*, 231 Ga. App. 96 (499 SE2d 89) (1998), in support of his argument about the proper focus of our inquiry. In *Pearson*, we held that there was no evidence that a pursuing officer operated his own vehicle in a reckless manner, and for this reason, the plaintiff could not satisfy the requirements for proximate cause set forth in OCGA § 40-6-6 (d) (2). Id. at 98-99 (2). We note, however, that the *Pearson* court focused on the manner in which the pursuing officer drove his own car only after adopting a law review restatement of the standard set forth in the statute, one that deviates substantially, we think, from the plain meaning of the statute: "[U]nder amended OCGA § 40-6-6, a finding of proximate cause or contributing proximate cause must be supported by evidence that 'the officer acts with reckless disregard for proper law enforcement procedures *in initiating or continuing the pursuit. . . .*' " Id. at 98 (2) (quoting 12 Ga. St. U. L. Rev. 295, 298 (1995)) (emphasis supplied). It seems to us that there is a rather significant difference between a disregard of procedures "in continuing a pursuit" and a disregard of procedures "in the decision to continue a pursuit," as illustrated by the arguments in this case. We conclude today that the analysis in *Pearson* of proximate cause under OCGA § 40-6-6 (d) (2) is not faithful to the plain meaning of the statute, and we disapprove that portion of the analysis. The relevant conduct is the decision of the deputy to initiate or continue the pursuit, not how he drove his own vehicle during the course of the pursuit. Accordingly, the court below did not err when it refused summary judgment to the Sheriff on the issue of proximate causation under OCGA § 40-6-6 (d) (2).

(b) We next turn to the question of cause in fact. To show that the wrongful conduct of the defendant is a cause in fact of his

44

injuries, a plaintiff ordinarily must prove that, but for this conduct, he would not have sustained the injury: "The defendant's conduct is not a cause of the event, if the event would have occurred without it." *English v. Crenshaw Supply Co.*, 193 Ga. App. 354, 361 (4) (387 SE2d 628) (1989) (citation and punctuation omitted). In this case, the Sheriff says, the Estate of Felder and her children cannot prove causation in fact because, even if the deputy had discontinued his pursuit, Clark might still have continued to drive fast and recklessly and the collision in which Felder was killed might still have occurred.

We are not in a position, however, to review the question of cause in fact because the court below did not address that question in its order denying the Sheriff's motion for summary judgment. Our Supreme Court has acknowledged that, when this Court reviews a decision of a trial court on a motion for summary judgment, it sits as a court for the correction of errors of law. See *City of Gainesville v. Dodd*, 275 Ga. 834, 837 (573 SE2d 369) (2002). As the Supreme Court explained, "[a]n error of law has as its basis a specific ruling made by the trial court. There having been no rulings by the trial court on the issues raised on appeal, there are no rulings to review for legal error." Id. (citation and punctuation omitted). And although an appellate court sometimes can review a record for purposes of summary judgment as effectively as a trial court and determine that the ruling under review was right for some reason other than the reason given by the court below, see id. at 838, we do not think an appellate court properly ought to consider whether the trial court was "wrong for any reason." See *Alston & Bird, LLP v. Mellon Ventures II, L.P.*, 307 Ga. App. 640, 648 (6) (b) (706 SE2d 652) (2010). Accordingly, we think the question of cause in fact is beyond the proper scope of our review in this case. See *McGonigal v. McGonigal*, 294 Ga. App. 427, 430 (3) (669 SE2d 446) (2008) ("Although Mr. McGonigal asks us to find that the trial court erred by denying his motion for summary judgment on the merits of his claim, we cannot reach that issue because the trial court did not address the merits of his motion, but merely denied it as moot."); *Harris Ventures, Inc. v. Mallory & Evans, Inc.*, 291 Ga. App. 843, 845 (2) (662 SE2d 874) (2008) (not reaching merits of motion for summary judgment where trial court did not reach merits). See also *Coweta County v. Simmons*, 269 Ga. 694, 694 (507 SE2d 440) (1998) ("[R]eview by the Court of Appeals is limited to the scope of the ruling in the trial court as shown by the trial record. . . .").

Moreover, even if we properly could consider cause in fact, see *Smith v. Henry*, 276 Ga. App. 831, 832 (1), n. 3 (625 SE2d 93) (2005), there are good reasons that we ought not do so in this case. The parties focus much of their argument about cause in fact on the testimony of an expert at his deposition. We note that the court

below granted in part a motion to exclude the testimony of this expert under OCGA § 24-9-67.1, ruling that the expert "should not be able to testify to what the suspect Clark would have done in this case had the pursuit been terminated." The Estate of Felder and her children did not take a cross-appeal from the ruling on the motion to exclude, but perhaps they did not see a need to do so, since the trial court never ruled explicitly on the question of cause in fact, and they could not know that the Sheriff would argue on appeal about cause in fact until he filed his brief, after the time had passed for them to take a cross-appeal. See OCGA § 5-6-38 (a). In these circumstances, it seems unfair to consider the question of cause in fact for the first time on this appeal.

In addition, the order of the court below granting in part the motion to exclude says that the expert properly can testify about whether the deputy acted in reckless disregard of proper police procedures when he chose to continue his pursuit of Clark. We note that some of his testimony about reckless disregard also may bear upon the question of cause in fact, including testimony about research that shows, the expert says, that most fleeing suspects will slow down if a pursuit is discontinued and they feel safe. The parties do not specifically address in their briefs whether testimony of this kind is excluded by virtue of the partial grant of the motion to exclude. For all these reasons, we think it best for the court below to address the question of cause in fact in the first instance. Because the Sheriff properly raised the question of cause in fact in his motion in the court below, and because the court did not address that question, we vacate the order denying the motion for summary judgment and remand for the court below to address cause in fact. See *Harris Ventures*, 291 Ga. App. at 845 (2).

*Judgment vacated and case remanded with direction. Ellington, C. J., Smith, P. J., Barnes, P. J., Miller, P. J., Phipps, P. J., Andrews, Mikell, Adams, Doyle, Dillard and McFadden, JJ., concur.*

DECIDED JULY 14, 2011 — 

*Burnside Wall, James W. Ellison*, for appellant.
*Finch, McCranie, Brown, Hendrix & Sullivan, Richard W. Hendrix, Frails & Wilson, Randolph Frails*, for appellees.