**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 27, 2018**

# In the Court of Appeals of Georgia

A18A0217. HA&W CAPITAL PARTNERS, LLC et al. v. BHANDARI et al.

McFADDEN, Presiding Judge.

This dispute arose when a group of registered representatives resigned from one financial services firm to join another. Central to this dispute is the interplay between their former employment agreements, which contained notice provisions limiting their ability to move from one firm to another, and the Protocol for Broker Recruiting, whose purpose is to facilitate such movement and to which both financial services firms had been signatories. That interplay is complicated by the fact that the former employer was undertaking to withdraw from the protocol as the registered representatives were undertaking to change firms. The central issue before us today

is whether the protocol invalidates provisions in those employment agreements requiring the registered representatives to give advance notice of their resignations.

This appeal challenges trial court orders granting and denying various cross motions for summary judgment on the parties' respective claims and counterclaims. Because the unambiguous language of the protocol does not invalidate the notice provisions at issue, the trial court erred in finding otherwise. So we reverse the grant of summary judgment that had disposed of the appellant former employer's breach of contract claim on the basis of that erroneous finding. The court's other summary judgment rulings premised on that erroneous finding require further consideration below, so we vacate those rulings and remand with direction.

Also before us are attorney fee counterclaims. We reverse the denial of summary judgment to the appellant former employer on the appellee registered representatives counterclaim for attorney fees under OCGA § 13-6-11 because such fees are not recoverable for compulsory counterclaims. But, there are genuine issues of material fact as to the appellees' counterclaims for attorney fees under a contractual provision, so we affirm the trial court's denial of summary judgment to the appellant former employer on that counterclaim. Likewise, because there are genuine issues of material fact as to the counterclaims for wrongful injunctive relief,

2

deferred compensation, and conversion, we affirm the trial court's denial of summary judgment to the appellant former employer on those counterclaims.

1. *Facts and procedural posture.*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]" OCGA § 9-11-56 (c). "On appeal, we review the grant or denial of summary judgment de novo, construing the evidence and all inferences in a light most favorable to the nonmoving party." *Seki v. Groupon, Inc.*, 333 Ga. App. 319 (775 SE2d 776) (2015) (citation omitted).

So construed, the evidence shows that Niraj Bhandari, David Austin, Lisa Schiffer, and Christopher Wynne entered into employment agreements with HA&W Capital Partners, LLC. HA&W Capital is a holding company whose operating subsidiaries include HA&W Wealth Management, LLC, an investment advisory firm. Pursuant to the employment agreements, Bhandari, Austin, Schiffer, and Wynne worked as registered representatives with HA&W Wealth, providing financial advice to clients.

3

The employment agreements contained notice provisions regarding an employee's voluntary termination of his or her employment. The notice provisions in Austin, Schiffer, and Wynne's respective contracts stated that each of them "shall have the right to voluntarily terminate [his or her] employment for any reason, at any time, upon ninety (90) days prior written notice to [HA&W Capital]." Bhandari's contract contained virtually the same provision, except that it provided for 60 days notice instead of 90 days.

On March 26, 2017 HA&W Capital transmitted a letter withdrawing from the Protocol, effective April, 5, 2014. HA&W Capital subsequently undertook to make that withdrawal retroactive.

On April 4, 2014, Bhandari, Austin, Schiffer, and Wynne all terminated their employment with HA&W Capital without providing written notice and immediately commenced employment at Morgan Stanley Smith Barney, LLC (hereinafter "Morgan Stanley"). That same day, HA&W Capital filed a complaint and obtained an ex parte temporary restraining order preventing Bhandari, Austin, Schiffer, and Wynne from contacting any clients of HA&W Capital, from accessing any information system of HA&W Capital, and from destroying documents or electronically stored information

4

relating to HA&W Capital's business. Five days later, on April 9, 2014, the trial court entered an order dissolving the temporary restraining order.

HA&W Capital amended the complaint, adding HA&W Wealth and other affiliated companies as plaintiffs (collectively, "HA&W"), and adding Morgan Stanley and Dorothy Stanton, another former HA&W Wealth employee, as defendants. The amended complaint included a claim for breach of contract against Bhandari, Austin, Schiffer, and Wynne (collectively, "the former employees") for violating the notice of termination provisions of their respective employment agreements. The defendants jointly filed an answer and counterclaims. The former employees' first counterclaim was for breach of contract based on allegations that HA&W had breached the Protocol for Broker Recruiting, an agreement between various investment firms.

The parties filed cross motions for summary judgment. After a hearing, the trial court entered three separate summary judgment orders. Its first order is entitled "Order on Cross-Motions for Partial Summary Judgment – Advance Notice Provisions and the Protocol for Broker Recruiting." In that order the trial court ruled on the former employees' motion for summary judgment on HA&W's breach of contract claim that the former employees had violated the notice provisions in their

5

employment agreements; the former employees' motion for summary judgment on their counterclaim that HA&W had breached the protocol; HA&W's motion for summary judgment on its claim that the former employees had breached the notice provisions; and HA&W's motion for summary judgment on the counterclaim that HA&W had breached the protocol.

In that order, the trial court stated that "the operative question in these [four] motions is whether the [p]rotocol applies and precludes [the former employees'] liability as to the advance notice provisions." The trial court then analyzed and rejected HA&W's various arguments as to why the protocol should not apply. The trial court then found as a matter of law that the protocol precludes any liability based on the notice of termination provisions in the employment contracts. Based on its finding that the protocol precludes liability under the notice provisions, the trial court granted summary judgment in favor of the former employees on HA&W's breach of contract claim; granted summary judgment in favor of the former employees on their breach of the protocol counterclaim; denied summary judgment to HA&W on its breach of contract claim; and denied summary judgment to HA&W on the breach of the protocol counterclaim.

6

In its other two orders, the trial court ruled on the parties' summary judgment motions concerning other claims and counterclaims. Among other rulings, the trial court denied summary judgment to HA&W on the former employees' counterclaims for wrongful injunctive relief, deferred compensation, conversion, and attorney fees. HA&W appeals.

2. *First summary judgment order: protocol and notice issues.*

In its first enumeration of error, HA&W has included the four summary judgment rulings set forth in the trial court's first order and refers to these four rulings collectively as the "Protocol Orders." In the same way that the trial court did not separately analyze the four motions for summary judgment before it, and instead premised all four of its rulings on those motions on the same "operative" finding regarding the applicability and effect of the protocol, HA&W has not set forth separate arguments challenging each ruling, and instead has relied on the same arguments to challenge the rulings collectively.

But the trial court's analysis regarding the protocol precluding the notice provisions was flawed: the protocol does not categorically invalidate notice provisions in employment agreements. So each of the rulings must be analyzed separately. In doing so, we reverse the grant of summary judgment to the former

employees on HA&W's breach of contract claim. The other three rulings in the first order – the denial of summary judgment to HA&W on its breach of contract claim, the denial of summary judgment to HA&W on the former employees' breach of contract counterclaim, and the grant of summary judgment to the former employees on their breach of contract counterclaim – must all be vacated and remanded for further consideration.

(a) *Summary judgment to former employees on breach of contract claim.*

HA&W contends that the trial court erred in granting summary judgment in favor of the former employees and against HA&W on its breach of contract claim that the former employees had violated the notice provisions of their employment agreements. We agree.

In its order, the trial court recited the contract provisions for each of the former employees requiring either 60 or 90 days prior written notice of termination, and the court further found that "[t]here is no dispute that Defendants Bhandari, Austin, Schiffer, and Wynne . . . all voluntarily terminated their employment with HA&W Capital on April 4, 2014, without providing any prior written notice to HA&W Capital[.]" Nevertheless, the trial court concluded that the former employees were entitled to summary judgment on the breach of contract claim on the ground that the

8

protocol, to which HA&W Wealth and Morgan Stanley were signatories,[1] precluded any liability as to the notice provisions. That conclusion was erroneous.

"The Protocol for Broker Recruiting is an agreement among [a number of] firms in the securities industry." *Credit Suisse Securities (USA) LLC v. Tracy*, 812 F3d 249, 252 n. 8 (2d Cir. 2016) (punctuation omitted). It provides:

> The principal goal of the following protocol is to further the clients' interests of privacy and freedom of choice in connection with the movement of their Registered Representatives ("RRs") between firms. If departing RRs and their new firm follow this protocol, neither the departing ¶ nor the firm that he or she joins would have any monetary or other liability to the firm that the ¶ left by reason of the ¶ taking the information identified below or the solicitation of the clients serviced by the ¶ at his or her prior firm, *provided*, however, that this protocol does not bar or otherwise affect the ability of the prior firm to bring an action against the new firm for "raiding." The signatories to this protocol agree to implement and adhere to it in good faith. (Emphasis in original.)

The protocol then identifies the following limited information that registered representatives may take with them when moving to a new firm: "client name, address, phone number, email address, and account title of the clients that they

---

[1]We note that it appears from the record and the parties' briefs that both HA&W and Morgan Stanley are no longer signatories to the protocol.

serviced while at the firm[.]" The departing registered representatives "are prohibited from taking any other documents or information." The protocol further requires that the "[r]esignations will be in writing delivered to local branch management and shall include a copy of the Client Information that the ¶ is taking with him or her. The ¶ list delivered to the branch also shall include the account numbers for the clients serviced by the ¶."

The trial court noted that it could find no Georgia cases addressing the protocol and no cases in any other jurisdiction dealing with the specific issue of whether the protocol precludes enforcement of a notice of termination provision in an employment contract of a registered representative leaving one firm for another. The trial court recognized that resolution of that issue in this case turns on construction of the protocol.

> "[C]ontract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court. It is well established that contract construction . . . begin[s] with the trial court's determination as to whether the language is clear and unambiguous. If no construction is required because the language is clear, the court then enforces the contract according to its terms.

*Y. C. Dev. v. Norton*, 344 Ga. App. 69, 72-73 (1) (806 SE2d 662) (2017) (citations and punctuation omitted). Here, the trial court correctly determined that the protocol's

10

language is clear and unambiguous. "[A] court may not strain to find an ambiguity and must enforce an unambiguous contract as written." *Ayers v. Assn. of County Commrs. of Georgia-Interlocal Risk Mgmt. Agency*, 332 Ga. App. 230, 235 (1) (771 SE2d 743) (2015) (citation and punctuation omitted). And the trial court properly rejected HA&W's attempt to withdraw from the protocol retroactively, its argument that its corporate structure rendered its participation illusory, and its argument that the RRs failed to substantially comply with their obligation under the protocol to provide certain information with their resignations.

But trial court erred in holding that the protocol categorically invalidates notice provisions in employment agreements. Such notice provisions are not specifically mentioned or otherwise referenced in the protocol. And we find nothing in the protocol's unambiguous language that prohibits the notice provisions at issue in this case.

So the trial court erred in ruling that HA&W's claim for breach of the notice provisions contravenes the express terms of the protocol. The trial court stated that this ruling

> articulates the most fundamental tenant of the [p]rotocol: if a RR moved from one [p]rotocol firm to another [p]rotocol firm they would be free to take a list of their clients' names, addresses, telephone numbers, email

11

addresses and account types, and after they have become affiliated with the new firm, solicit all of their clients to move accounts to the RR's new firm[.]

This fundamental tenant cited by the trial court is set forth in the protocol provision that if registered representatives follow the protocol, then they would not have "any monetary or other liability to the firm that [they] left *by reason of [them] taking the [client] information . . . or the solicitation of the clients serviced by [them] at [their] prior firm*[.]" (Emphasis supplied.)

However, HA&W's breach of contract claim does not allege that the former employees are liable by reason of taking client information or soliciting clients. Rather, it merely alleges that the former employees are liable by reason of having terminated their employment without giving prior notice as required by their employment agreements. Thus, contrary to the trial court's ruling, the action for breach of contract seeking to enforce the notice provisions does not contravene the express terms of the protocol.

"Georgia courts have acknowledged a cause of action for . . . an employee's breach of an employment contract's requirement that he give certain notice before terminating the contract[.]" *Insight Tech. v. FreightCheck*, 280 Ga. App. 19, 24 (1)

(a) (633 SE2d 373) (2006) (citation omitted). See *Witty v. McNeal Agency*, 239 Ga. App. 554, 560-561 (4) (521 SE2d 619) (1999).

> The employee's contractual duty to provide a specified termination notice to the employer under the contract is not a restrictive covenant and does not constitute a covenant that falls along with [any] void restrictive covenants in the contract. . . . The purpose of the notice in the contract by the employee of voluntary termination is not difficult to fathom. Generally, notice by the employer is required under an employment contract so that the employee has an opportunity to seek other employment prior to actual termination of employment. Likewise, . . . [a] contract provision requiring [an employee to give] a specified prior notice of termination is reasonable to allow the employer to prepare for an orderly transition and enforceable through special damages resulting from a sudden quitting, and in the absence of special damages, nominal damages are recoverable.

*Capricorn Systems v. Pednekar*, 248 Ga. App. 424, 425 (1) (546 SE2d 554) (2001) (citations and punctuation omitted).

In arguing that they are not liable for violating the notice provisions in their employment contracts, the former employees cite to evidence supporting their contention that the protocol prohibits such provisions. They point to a page of a deposition given by a non-party in a matter unrelated to this case which purports to establish the underlying intent of the drafters of the protocol. And they point to deposition testimony of an HA&W representative about what HA&W would have done if the RRs had given the notice specified in their employment agreements. As

13

an initial matter, we note that, as the trial court properly ruled, such extrinsic evidence cannot be used to vary the unambiguous language of the protocol. See *Simpson v. Pendergast*, 290 Ga. App. 293, 296 (1) (659 SE2d 716) (2008) (extrinsic evidence cannot be used to vary unambiguous contract terms).

As for the deposition testimony given in 2010 by a non-party in an unrelated case, that deponent opined that he believed "the notice period would be inconsistent with the protocol." But that single page of deposition testimony provides no context explaining what notice period was being discussed and there is certainly no indication that it pertained to the notice provisions in the employment contracts at issue in the instant case. Moreover, such hearsay may not be considered on summary judgment. See OCGA § 24-8-801 (c) ("'Hearsay' means a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); *R&G Investments & Holdings v. American Family Ins. Co.*, 337 Ga. App. 588, 595-596 (3) (787 SE2d 765) (2016) (inadmissible hearsay should not have been considered on summary judgment). See also *General Motors Corp. v. Moseley*, 213 Ga. App. 875, 880 (3) (447 SE2d 302) (1994) (excluding deposition testimony given in prior unrelated case where there was no meaningful opportunity to cross-examine deponent).

14

With regard to the HA&W representative's deposition, the deponent acknowledged that if Bhandari had given his 60-days termination notice, HA&W would have told him to transition the clients he was servicing to another registered representative. But as explained above, that is the proper purpose of such a notice provision – "to allow the employer to prepare for an orderly transition[.]" *Capricorn Systems*, supra. And contrary to the former employees' argument, a direction from HA&W that Bhandari transition his clients to another representative during the 60-days notice period would not have conflicted with the plain language of the protocol allowing a registered representative to take client information and solicit clients after joining a new firm. Bhandari certainly would have been free to do those very things upon joining Morgan Stanley after his termination at HA&W, and per the plain language of the protocol, any client who wanted to transfer his or her account to Bhandari's new firm could have done so simply by signing a specified form.

Furthermore, to the extent the notice provisions can be deemed as restrictions on the former employees' solicitation of clients during the notice period, such contractual restrictions prior to the employees leaving HA&W are expressly authorized by the protocol, which provides: "A firm would continue to be free to enforce whatever contractual . . . restrictions exist on the solicitation of customers to

15

move their accounts by a departing RR *before he or she has left the firm*." (Emphasis supplied.) The notice provisions applied to the former employees before they left HA&W, and therefore HA&W was free to enforce those provisions prior to their resignations.

Because the unambiguous language in the protocol does not prohibit the notice provisions at issue in this case, the trial court erred in ruling otherwise and in holding that the protocol precluded liability for breach of the notice provisions. Accordingly, the grant of summary judgment to the former employees on HA&W's breach of contract claim must be reversed.

We note that this ruling does not address the significance, if any, of the fact that HA&W was undertaking to withdraw from the protocol as the RRs were undertaking to resign. Nor does this ruling address the issue of damages. HA&W has acknowledged that it is not seeking to hold the former employees liable for special damages based on taking client information or soliciting clients, which would contravene the plain language of the protocol. Its claim for damages — if indeed there was a breach of contract — arises out of its inability to conduct an orderly transition. And even "if there are no special damages that can be proven, then nominal damages are recoverable." *Vara v. Essex Ins. Co.*, 269 Ga. App. 417, 420 (604 SE2d 260)

16

(2004) (citations omitted). "In every case of breach of contract the injured party has a right to damages, but if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action." OCGA § 13-6-6. See also *Capricorn*, supra (holding that if no actual damages shown for breach of a termination notice provision, then nominal damages were still recoverable).

(b) *Denial of summary judgment to HA&W on its breach of contract claim.*

As set out above, the trial court denied HA&W's motion for summary judgment on its breach of contract claim based on its finding that the protocol precluded any liability under the notice provisions. But given our ruling above that the trial court's finding was erroneous and that the protocol does not preclude liability, it follows that the trial court's denial of HA&W's motion was likewise erroneous. Although this court can sometimes review a summary judgment ruling to determine if it was right for some reason other than that given by the court below, this court cannot also "consider whether the trial court was wrong for any reason." *Strength v. Lovett*, 311 Ga. App. 35, 44 (2) (b) (714 SE2d 723) (2011) (citation and punctuation omitted). Here, the trial court has not yet considered the question of whether, given that the protocol does not prohibit the notice provisions, there are any

17

genuine issues of material fact as to the former employees' liability under those provisions. Moreover, the parties have not fully argued and briefed that matter.

> Accordingly, we think the question of [whether there are such genuine issues of material fact] is beyond the proper scope of our review in this case. [Cits.] See also *Coweta County v. Simmons*, 269 Ga. 694, 694 (507 SE2d 440) (1998) ('Review by the Court of Appeals is limited to the scope of the ruling in the trial court as shown by the trial record').

*Strength*, supra (punctuation omitted). We therefore vacate the trial court's denial of HA&W's motion for summary judgment on its breach of contract claim and remand for the court below to consider whether there are any genuine issues of material fact. See id. at 45 (2) (b).

(c) *Former employees' counterclaim for breach of contract.*

The trial court also based its rulings on the former employees' breach of contract counterclaim – granting summary judgment to the former employees and denying summary judgment to HA&W – on its erroneous finding that the protocol precluded liability under the notice provisions of the employment contracts. For the same reason explained immediately above in Division 1 (b), it follows that those summary judgment rulings on that counterclaim were likewise erroneous.

Moreover, we also note even if the trial court had correctly found that the protocol precludes the notice provisions in the employment contract, such a finding

18

would not have supported the trial court's summary judgment rulings on the breach of contract counterclaim. That counterclaim, unlike HA&W's breach of contract claim, is not premised on the notice provisions. Rather, that counterclaim alleged that HA&W had breached the protocol by violating the notice of withdrawal provision in the protocol[2] and by obtaining the ex parte temporary restraining order without informing the trial court that it was a signatory of the protocol. Thus, merely because the trial court found that the protocol precluded liability under the employment contract notice provisions, it did not necessarily follow that the defendants' were entitled to summary judgment on their breach of the protocol counterclaim. Rather, a determination of whether or not there existed genuine issues of material fact as to the specific claims of how HA&W allegedly breached the protocol was still required in order to make a summary judgment ruling. See OCGA § 9-11-56 (c). So we also vacate the trial court's summary judgment rulings on the former employees' breach of the protocol counterclaim and remand for the court below to consider whether there are any genuine issues of material fact as to that counterclaim. See *Strength*, supra.

---

[2]The protocol provides: "A signatory to this protocol may withdraw from the protocol at any time and shall endeavor to provide 10 days prior written notice of its withdrawal to all other signatories hereto."

3. *Second summary judgment order on other counterclaims.*

HA&W challenges the trial court's denials, in its second order, of HA&W's

motions for summary judgment on the former employees' counterclaims for wrongful

injunctive relief, attorney fees, deferred compensation, and conversion.

> A defendant demonstrates entitlement to summary judgment by showing that the record lacks evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case. The defendant does not need to affirmatively disprove the plaintiff's case, but may prevail simply by pointing to the lack of evidence. If the defendant does so, the plaintiff cannot rest on his pleadings, but must point to specific evidence that gives rise to a triable issue of fact.

*Keisha, LLC v. Dundon*, 344 Ga. App. 278, 278-279 (809 SE2d 835) (2018) (citation

and punctuation omitted). Thus, in order to be entitled to summary judgment on the

counterclaims, HA&W, as the defendant-in-counterclaim, must show that the record

lacks evidence sufficient to create a jury issue on at least one essential element of

each of those claims.

(a) *Wrongful injunctive relief counterclaim.*

The defendants asserted a counterclaim for wrongful injunctive relief based on

HA&W obtaining the ex parte temporary restraining order prohibiting them from,

among other things, contacting any clients of HA&W Capital. HA&W now argues

that its corporate structure entitles it to summary judgment on that counterclaim:

HA&W Capital has no clients. And thus, HA&W argues, there is no evidence that the former employees were damaged by the restraining order. First, we note that HA&W's argument is inconsistent with it having sought and obtained the restraining order expressly preventing the former employees from contacting HA&W Capital's clients. Moreover, the former employees have pointed to evidence giving rise to questions of fact as to whether they lost clients and were thus damaged by the restraining order. We therefore find no error in the trial court's denial of summary judgment to HA&W on this counterclaim.

(b) *Attorney fees counterclaim.*

The former employees counterclaimed for attorney fees both pursuant to OCGA § 13-6-11 and under a "prevailing party" provision in their employment agreements. The trial court denied HA&W's motion for summary judgment, finding that there are genuine issues of material fact as to both the statutory and contractual attorney fees. HA&W argues that the former employees are not entitled to attorney fees on either ground.

(i) *OCGA § 13-6-11.*

Attorney fees under OCGA § 13-6-11 are available only to plaintiffs. The statue provides: "The expenses of litigation generally shall not be allowed as a part

21

of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

> Furthermore, the award of expenses of litigation under OCGA § 13-6-11 can only be recovered by the plaintiff in an action under the language of the statute; therefore, the defendant and plaintiff-in-counterclaim cannot recover such damages where there is a compulsory counterclaim. [Cit.] See also *Byers v. McGuire Properties*, 285 Ga. 530, 540 (6) (679 SE2d 1) (2009) (plaintiff-in-counterclaim cannot recover attorney's fees under OCGA § 13-6-11 unless it asserts a counterclaim which is an independent claim that arose separately from or after the plaintiff's claim). Under the Civil Practice Act, a pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. [Cit.]

*Graybill v. Attaway Constr. & Assoc.*, 341 Ga. App. 805, 810 (2) (a) (802 SE2d 91) (2017) (punctuation omitted).

Here, the former employees, as plaintiffs-in-counterclaim, contend that they may seek to recover OCGA § 13-6-11 attorney fees because their counterclaims for defamation, deferred compensation, and an ownership interest in HA&W were non-compulsory. But they have failed to support that conclusory statement with any citations to the record or any explanation as to how those counterclaims are non-

22

compulsory. Our review of those counterclaims reveals that they all arise out of the same transaction or occurrence that is the subject matter of HA&W's claim – the former employees' termination of their employment at HA&W. Consequently, we conclude that the counterclaims upon which the former employees base their claim for attorney fees are "clearly in the nature of compulsory counterclaims and thus fees [are] not permitted for those claims under OCGA § 13-6-11." *Graybill*, supra (citation and punctuation omitted). Accordingly, "we reverse the trial court's denial of summary judgment in [HA&W's] favor on [the] claim for attorney fees under OCGA § 13-6-11." *Nash v. Studdard*, 294 Ga. App. 845, 852 (4) (670 SE2d 508) (2008).

(ii) *Prevailing party provision.*

The former employees also seek attorney fees under the following provision in their respective employment agreements with HA&W Capital: "In the event of legal action by either party to enforce this Agreement, the prevailing party in such action shall be entitled to recover from the other party its or his expenses of litigation (including reasonable attorney's fees, court costs, and expert witness fees) *actually incurred*." (Emphasis supplied.) HA&W argues that it is entitled to summary judgment on this counterclaim because the former employees have not *actually incurred* any attorney fees, pointing to deposition testimony and interrogatory

23

responses from the former employees that Morgan Stanley was at that time paying for such fees. In support of its argument, HA&W cites *Trugreen Cos. v. Mower Bros.*, 570 Fed. Appx. 775 (10th Cir. 2014), in which the federal court found that employees had not incurred litigation fees because under a written contract with their employer, that company had assumed sole liability for all of the employees' litigation fees and costs. Id. at 777.

Of course a decision of a federal circuit court is only persuasive authority in this court. See *Bobick v. Community & Southern Bank*, 321 Ga. App. 855, 861 (3) n. 5 (743 SE2d 518) (2013). And we need not decide today whether to follow *Trugreen*. This case is materially different from *Trugreen*. In this case, unlike in *Trugreen*, HA&W has not identified a written contract or other evidence showing that Morgan Stanley has contractually assumed sole liability for all of the former employees' attorney fees. Rather, the evidence cited by HA&W shows only that former employees indicated that Morgan Stanley was paying for litigation expenses at the time the depositions or interrogatory responses were given. It is not this court's "duty to cull the record in search of evidence to support the contentions of parties." *Cox v. Southern Guar. Ins. Co.*, 254 Ga. App. 776, 778 (2) (563 SE2d 882) (2002) (citation omitted). Thus, based on the evidence cited by HA&W to support its contention, we

cannot say that the former employees unequivocally are not legally liable for some expenses of litigation or that they will never incur any such expenses in this ongoing case.

Indeed, the court in *Trugreen* emphasized that it was not "address[ing] the situation where a party remains legally liable for fees and costs even though someone else pays them." Id. at 777. Given the evidence cited by HA&W, a finding that the former employees will, as a matter of fact and law, never incur or be liable for expenses of litigation in this case would be premature. Because there are genuine issues of material fact on the matter, the trial court correctly denied summary judgment to HA&W on this counterclaim.

(c) *Deferred compensation counterclaim.*

HA&W argues that the trial court erred in denying summary judgment on the deferred compensation counterclaims of Austin, Schiffer, and Wynne because they failed to comply with the plain language of the deferred compensation plan, as incorporated into their respective employment contracts, which required them to execute and deliver a release to HA&W and to exhaust their administrative remedies. With regard to the release, Austin, Schiffer, and Wynne have pointed to evidence that HA&W itself failed to timely comply with a requirement that it first deliver the

release to them upon their resignations. Thus, there exist genuine issues of material fact as to the proper execution of the release.

As for what HA&W calls failure to exhaust administrative remedies, HA&W has not specified in the argument section of its brief the remedies to which it is referring. Rather, HA&W simply makes the conclusory allegation that Austin, Schiffer, and Wynne did not exhaust their administrative remedies. We note that in the statement of facts portion of its brief, HA&W stated that Austin, Schiffer, and Wynne did not make a claim under the plan prior to the lawsuit. But HA&W did not reference this statement, or any other, as the basis for its conclusory claim that some mandatory prerequisites have not been satisfied. "We will not speculate or make arguments on [HA&W's] behalf; to do so would improperly change this court's role from disinterested decision-maker to appellate advocate." *Harmon v. Innomed Technologies*, 309 Ga. App. 265, 270 (1) (b) (709 SE2d 888) (2011). Under these circumstances, HA&W has failed to meet its burden on appeal of showing that the record lacks evidence sufficient to create a jury issue on at least one essential element of the deferred compensation counterclaims. See *Keisha, LLC*, supra. Accordingly, the trial court did not err in denying summary judgment on those counterclaims.

(d) *Conversion counterclaims.*

26

HA&W enumerates that the trial court erred in denying its motion for summary judgment on the former employees' conversion counterclaims. But the argument in support of this enumeration fails to cite to any part of the record. "Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not search for and may not consider that enumeration." Court of Appeals Rule 25 (c) (2) (i). As noted above, this court has no duty to cull the record in search of evidence to support the claims of parties. *Cox*, supra. HA&W has thus failed to show that the trial court erred in denying summary judgment on these counterclaims.

*Judgment affirmed in part, reversed in part, vacated in part, and case remanded with direction. Ray and Rickman, JJ., concur.*