**FOURTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

June 23, 2023

# In the Court of Appeals of Georgia

A23A0061. BLEVINS et al. v. PECGA, LLC d/b/a PALMER ENGINEERING
    COMPANY.

PIPKIN, Judge.

Appellants Anthony D. Blevins and Cathy L. Procaskey appeal the entry of summary judgment in favor of Appellee PEGGA, LLC d/b/a Palmer Engineering Company on their claim of professional negligence. For the reasons set forth below, we reverse.

The standard applicable to summary judgment is familiar and well-settled: "Summary judgment is warranted when any material fact is undisputed, as shown by the pleadings and record evidence, and this fact entitles the moving party to judgment as a matter of law." *Strength v. Lovett*, 311 Ga. App. 35, 39 (2) (714 SE2d 723) (2011). On appeal from the grant of summary judgment, we apply a de novo standard

of review, construing the evidence in a light most favorable to the non-movant. See *Latson v. Boaz*, 278 Ga. 113, 113 (589 SE2d 485) (2004).

Here, Appellants hired an architectural firm to design a residence to sit on a parcel of land in Cartersville, Georgia. The architectural firm turned to a general contractor, Housing Trends, to construct the residence; Housing Trends, in turn, retained Appellee to provide professional engineering services for the design and construction of the house. Of note, the plans provided by Appellee lacked any notes pertaining to the elevation of the house relative to the detached garage.

Housing Trends started construction on the home and poured the footings and foundation walls in March 2016, but was eventually fired from the project; two other general contractors followed. Around the time that Housing Trends was fired, Appellant Blevins learned "about a challenge with the construction in that wood was going to be below grade when construction was completed." One of the subsequent builders attempted to address the issue, but the house was ultimately constructed with wood below grade "because of [Appellee's] structural design." An inspection showed that the house did not comply with the relevant building codes and that Appellants would not have been able to obtain a certification of occupancy.

2

After construction, Appellants brought this professional negligence action against Appellee, claiming that its structural drawings "failed to properly address the elevation of the floor framing with respect to the final adjacent exterior grade, which resulted in the [residence] being built with significant grading, floor framing, and foundation issues." In short, Appellants "sue[d] because the final grade of their property was above the bottom of the wood floor framing," which required extensive structural remediation to correct In support of their action, Appellants retained expert witness Tony Ganooni, who was critical of the lack of detail in the structural drawings and testified that it was the placement of the detached garage relative to the location of the house that "caused the major issue with the walls being lower than grade."

Appellee moved for summary judgment, asserting that in order to recover "for engineering malpractice [a plaintiff] must plead and prove that the [engineer's] plans and specifications were followed" but that "the undisputed evidence show[ed] that [Appellee's] plans were *not* followed by the builder." (Emphasis supplied.) In support of its motion, Appellee pointed to its structural drawing depicting "the finished grade and the floor joists" in the relevant area, which, Appellee said, "clearly require the floor framing . . . to be constructed above and not touching the finished exterior

3

grade[.]" In response, Appellants argued that genuine issues of material fact precluded summary judgment, highlighting the fact that Appellee's own engineer testified that Housing Trends – the original contractor on the project – had, in fact, constructed the residence according to plan. Appellants argued in the alternative that, even if the builder had not strictly adhered to structural designs, Appellee could still be liable if it was reasonably foreseeable that a builder could misinterpret the structural drawings; Appellants asserted that testimony from their numerous experts created a fact question on this issue. The trial court ultimately sided with Appellee, granting summary judgment because Appellants had failed to "come forward and point to evidence showing that the . . . construction of [the] house was entirely consistent with [Appellee's] plans." Appellants challenge this ruling on appeal.

1. We begin by noting that the record transmitted to this Court was not limited to that which was before the trial court at the time that summary judgment was decided. Rather, after the trial court ruled, Appellants filed a "Notice of Filing of Evidence in Support of their Notice of Appeal" and enlarged the record to include multiple additional depositions and discovery documents; the additional filings

4

expanded the record three-fold.[1] As Appellee correctly notes in its brief, Appellants attempt to use this expanded record to support their appeal; indeed, nearly all of Appellants' brief – including their statement of material facts and argument sections – rely in no small part on these thousands of additional pages. However, "[t]his is a court for correction of errors of law, and our decision must be made upon the record sent up by the trial court. Appellate courts will review only evidence presented to the trial court before its ruling on the motion. Additional evidence will not be admitted on appeal." (Citations and punctuation omitted.) *Cornwell v. Kirwan*, 270 Ga. App. 147, 151 (2) (606 SE2d 1) (2004).

While Appellants purportedly present a "Restated Statement of Material Facts" in their reply brief that is limited "to evidence considered by the trial court at the time of the trial court's ruling on summary judgment," this does not correct the argument sections of Appellants' principle brief, which *also* rely heavily on the expanded record. Despite understanding that they had relied on materials that were not before the trial court at the time that summary judgment was decided, Appellants have not filed an amended brief before this Court. In short, Appellants' brief does not

---

[1] The record before this Court totals over three-thousand pages; the record before the trial court, however, was less than one-thousand pages.

adequately demonstrate where evidence supporting their claim to reversal was presented to the trial court, and we will not cull the record on their behalf. *Luong v. Tran*, 280 Ga. App. 15, 18 (2) (633 SE2d 797) (2006) ("[I]t is axiomatic that [Appellant] bears the burden of showing error affirmatively by the record."). For this reason alone, we need not consider Appellants' arguments on appeal. See *Stewart v. Johnson*, 358 Ga. App. 813, 814 (856 SE2d 401) (2021) (recognizing that this Court need not consider enumerations that are not supported by proper references to the record). Nevertheless, we exercise our discretion and consider the merits of Appellants' arguments. Id.

2. Appellants argue that the trial court erred in granting summary judgment to Appellee on their claim for professional negligence. With respect this type of claim,

> [t]he law imposes upon persons performing architectural, engineering, and other professional and skilled services the obligation to exercise a reasonable degree of care, skill, and ability, which generally is taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by their respective professions.

(Citation and punctuation omitted.) *Bodin v. Gill*, 216 Ga. 467, 472 (1) (117 SE2d

6

325) (1960).[2] In such a case, "it is essential that the plaintiff prove that construction of the project designed was accomplished in compliance with the plans and specifications furnished by the defendant, *at least with respect to that portion of the work claimed to be defective*." (Emphasis supplied.) *Covil v. Robert & Co. Associates*, 112 Ga. App. 163, 168 (2) (144 SE2d 450) (1965). The requirement that a complaining party demonstrate that design specifications were followed by the builder is "an essential part of the proof of causation in a Georgia negligent design case." *Desco Mechanical Contractors, Inc. v. Todd-Cea, Inc.*, 531 F2d 1292, 1296 (5th Cir. 1976). This appeal concerns whether summary judgment was appropriate as to the design-specification requirement.

Here, the trial court granted Appellee's motion for summary judgment after concluding that Appellants had not demonstrated "that the construction of the [Appellants'] house was entirely consistent with the [Appellee's] plan." Now, on appeal, Appellants contend that this standard was improper, requiring that they "prove that the final construction for the entire home was accomplished in accordance

---

[2] The relevant standard of care – as well as any alleged breach – must be established by expert testimony. See *Covil v. Robert & Co. Associates*, 112 Ga. App. 163, 166 (1) (144 SE2d 450) (1965). There is no dispute that Appellants have presented affidavits and testimony from expert witnesses in support of their claim.

7

with Appellee's [s]tructural [d]rawings." We agree. As *Covil* makes clear, when a case is based upon negligence of an engineer in preparing plans, the plaintiff bears the burden of demonstrating compliance with those plans only "with respect to that portion of the work claimed to be defective." *Covil*, 112 Ga. App. at 168 (2). The question then is whether there is sufficient evidence creating a fact question as to this issue; we conclude that there is.

Looking at the evidence that was *before the trial court* in a light most favorable to Appellants as the non-moving party, there is conflicting evidence as to whether Appellee's designs were followed. While Appellee emphatically claims that its structural drawing – which shows wood flooring positioned above grade – establishes that the house was necessarily not constructed as designed, this is but a single piece of evidence. On the other hand, testimony from Ganooni, one of Appellant's experts, suggests that the problem with the flooring arose from Appellee's failure to "coordinate" and "consider" the location of the detached garage relative to the main house in its drawing; the record evidence shows that the ultimate problems here would have arisen with the pouring of the foundation, which was accomplished by Housing Trends. As to Housing Trends' work on the project, Appellee has steadfastly maintained – both below and on appeal – that Housing Trends followed the structural

8

designs during its construction of the house. Thus, there is a fact question as to whether the house was built, at least with respect to that portion of the work claimed to be defective, in accordance with Appellee's design. Accordingly, the trial court erred when it granted summary judgment in favor of Appellee, and we reversed the judgment of the trial court.

*Judgment reversed. Rickman, C. J., and Dillard, P. J., concur.*